IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| GARY V., | |
| Plaintiff, | 4:21CV3072 |
| vs. | |
| KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration; | MEMORANDUM AND ORDER |
| Defendant. | |

Plaintiff claims in this Social Security appeal that the Commissioner's decision to deny him benefits under the Social Security Act is contrary to law and not supported by substantial evidence. Having considered all arguments and materials presented, and for the reasons explained below, the Commissioner's decision will be affirmed.

## BACKGROUND

On March 20, 2018, Plaintiff filed an application for disability insurance benefits alleging a disability onset date of November 4, 2017.[1] (TR. 11, 189, 249.) Plaintiff's application was denied initially and on reconsideration. (TR. 124, 129.) Plaintiff thereafter filed a request for an administrative hearing and an administrative hearing was held before an administrative law judge ("ALJ") on May 28, 2020. (TR. 58-94.)

---

[1] At the administrative hearing held in this matter, Plaintiff amended the alleged onset date to February 14, 2018. (TR. 11.)

On July 15, 2020, the ALJ issued an unfavorable decision finding Plaintiff was not disabled under the Social Security Act. (TR. 11-23.) In the decision, the ALJ evaluated Plaintiff's claim by following the five-step sequential analysis prescribed by the Social Security Regulations.[2] The ALJ found Plaintiff had the severe impairments of lumbar spondylosis, degenerative disc disease of the lumbar spine status-post left L5-S1 foraminotomy, and hip osteoarthritis. (TR. 14.) However, the ALJ found that none of these impairments, singly or in combination, met or equaled the severity of one of the listed impairments in 20 C.R.F. Part 404, Subpart P, Appendix 1. (TR. 14.) The ALJ then formulated Plaintiff's residual functional capacity ("RFC")[3] as follows:

> [Plaintiff] has the residual functional capacity to perform sedentary work . . . except [Plaintiff] can occasionally climb ladders, ropes, and scaffolds, balance, stoop, kneel, crouch, and crawl. He can tolerate occasional exposure to extreme cold, vibration, and hazards such as high exposed places and moving mechanical parts.

(TR. 15.) Based on this RFC, the ALJ found Plaintiff could not perform his past relevant work but could perform other work in the national economy. (TR. 21.) Therefore, Plaintiff's request for benefits was denied.

Plaintiff requested review of the ALJ's decision by the Appeals Council, which was denied on February 5, 2021. (TR. 1.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

---

[2] The Social Security Administration uses a five-step process to determine whether a claimant is disabled.

> At the first step, the claimant must establish that he has not engaged in substantial gainful activity. The second step requires that the claimant prove he has a severe impairment that significantly limits his physical or mental ability to perform basic work activities. If, at the third step, the claimant shows that his impairment meets or equals a presumptively disabling impairment listed in the regulations, the analysis stops and the claimant is automatically found disabled and is entitled to benefits. If the claimant cannot carry this burden, however, step four requires that the claimant prove he lacks the RFC to perform his past relevant work. Finally, if the claimant establishes that he cannot perform his past relevant work, the burden shifts to the Commissioner at the fifth step to prove that there are other jobs in the national economy that the claimant can perform.

*Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006) (citations omitted).

[3] "RFC" is what a claimant "is able to do despite limitations caused by all of the claimant's impairments." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (citation omitted).

## ANALYSIS

A denial of benefits by the Commissioner is reviewed to determine whether the decision is supported by substantial evidence on the record as a whole. *See Hogan v. Apfel*, 239 F.3d 958, 960 (8th Cir. 2001). "Substantial evidence" is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *Id*. at 960-61. Evidence that both supports and detracts from the Commissioner's decision must be considered, but the decision may not be reversed merely because substantial evidence supports a contrary outcome. *Moad v. Massanari*, 260 F.3d 887, 890 (8th Cir. 2001). The Court must "defer heavily" to the Commissioner's findings and conclusions. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015).

On appeal, Plaintiff argues (1) that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to obtain a medical opinion regarding Plaintiff's ability to perform work-like functions; and (2) the ALJ failed to properly consider whether Plaintiff's lower back impairment met or medically equaled a presumptively disabling impairment. For the reasons explained below, the Court finds Plaintiff's arguments unpersuasive.

1. **RFC Evaluation and Medical Evidence**

Plaintiff claims the ALJ's RFC determination is not supported by substantial evidence because the ALJ did not obtain a medical opinion regarding Plaintiff's ability to work, but instead relied upon her own lay interpretation of the medical evidence. Plaintiff complains that no medical source interpreted his medical data and that his worsening condition was not considered by any of the opining medical sources. The Court disagrees that the ALJ's RFC evaluation was deficient.

In determining a claimant's RFC, the ALJ must examine "all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (quotation omitted). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (quotation omitted). "However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Id*. "Even though the RFC assessment draws from medical sources for support, it is ultimately an

3

administrative determination reserved to the Commissioner." *Cox v. Astrue,* 495 F.3d 614, 619-20 (8th Cir. 2007).

Here, there is substantial evidence to support the ALJ's RFC determination. Contrary to Plaintiff's assertion, the ALJ properly considered the evidence of record, including the medical evidence, in formulating Plaintiff's RFC. In her opinion, the ALJ discussed the treatment records of several physicians, including Plaintiff's neurosurgeon, Dr. Raqeeb Haque. (TR. 16.) Plaintiff visited Dr. Haque in March, 2018. (TR. 398.) Dr. Haque's treatment records indicate that Plaintiff had an endplate fracture at L5 with associated edema, as well as chronic foraminal arthritis in his left foramen. (TR. 398.) Dr. Haque assessed Plaintiff with a closed stable burst fracture of his fifth lumbar vertebra with routine healing. (TR. 399.) Plaintiff had normal lower extremity strength and normal sensation. (TR. 399.) Plaintiff was examined by Dr. Haque again on May 8, 2018. (TR. 395.) At that time, Plaintiff reported having back and buttocks pain. (TR. 395.) Dr. Haque's treatment notes indicate, however, that Plaintiff's extremity strength was normal. (TR. 395-96.) Treatment notes from APRNC Mary Schweitzer of RWPC Neurosurgery dated March, 2018 state that Plaintiff had physical therapy three times a week for a month and reported receiving relief while doing it, but not afterwards. (TR. 400.) Plaintiff did not have numbness or tingling in the saddle area. (TR. 400.) Plaintiff reported he got pain relief from a Medrol Dosepak he was given at an urgent care clinic. (TR. 400.) He also had a normal left and right straight leg raise. (TR. 401.)

The ALJ also discussed the treatment records of Dr. Henrik Mike-Mayer, who examined Plaintiff in March, July, and August, of 2019. (TR. 19; TR. 437; TR. 440; TR. 442; TR. 446.) In March, 2019, Dr. Mike-Mayer documented that Plaintiff's extremity strength was a 5 out of 5, except a portion of his left lower extremity, which was assessed at a level 4 out of 5. (TR. 438.) Plaintiff had a normal musculoskeletal range of motion. (TR. 438.) Dr. Mike-Mayer indicated in a work-release note he prepared for Plaintiff in March, 2019 that Plaintiff could return to light duty, with a ten-pound lifting restriction. (TR. 19; TR. 442; TR. 446.) In her decision, the ALJ found Dr. Mike-Mayer's opinion persuasive as to placing a lifting limitation in Plaintiff's RFC, as well as to Plaintiff's ability to return to work. (TR. 19; TR. 446.) As stated by the ALJ, Dr. Mike-Mayer prepared another work-release note for Plaintiff in approximately June, 2019 in which he indicated Plaintiff could not return to work until after Plaintiff's two-week follow-up from a

surgery which Plaintiff had on June 3, 2019. (TR. 446.) The ALJ concluded this note was unpersuasive because it was reflective of a temporary limitation directly related to Plaintiff's recovery from surgery, as opposed to permanent restrictions. (TR. 19.)

The ALJ also pointed to Dr. Mike-Mayer's treatment records which indicate that Dr. Mike-Mayer encouraged Plaintiff to discontinue use of a cane. (TR. 17; TR. 440-442.) Dr. Mike-Mayer's treatment notes pertaining to use of a cane contradict Plaintiff's assertion that he needs a device for assistance with mobility. Plaintiff testified at the administrative hearing that his physical therapist recommended that he use a walker for assistance with mobility. (TR. 16; TR. 80.) However, his physical therapy treatment notes do not indicate that Plaintiff needs a walker or that the physical therapist recommended one. (TR. 376-93.) Nor is there any record that Dr. Haque recommended use of a cane or walker. (TR. 17; TR. 395; TR. 399.) The ALJ also cited the medical treatment notes of Dr. Raymond Van Den Hoven from 2020 wherein Dr. Van Den Hoven documented that Plaintiff could ride a bicycle without discomfort. (TR. 461.)

In determining Plaintiff's RFC, the ALJ also considered the type, dosage, effectiveness, and side effects of Plaintiff's medication. (TR. 18.) It appears from the medical records that Plaintiff's medication consisted of spinal injections and oral medication. The oral medication treatment was conservative in nature, mostly consisting of ibuprofen, gabapentin, and at one point muscle relaxers. Although Plaintiff reported receiving minimal relief from injections, he stated in May, 2020, that Motrin gave him a 50% reduction in pain. (TR. 461.)

Plaintiff's assertion that the ALJ did not consider his allegedly worsening medical condition in formulating his RFC is not supported by the record. In finding Plaintiff could perform primarily sedentary work, the ALJ discussed the state agency medical consultants' opinions who opined in September, 2018 and March, 2019 that Plaintiff had the RFC to perform light work with occasional postural and environmental limitations. (TR. 18-19; TR. 95-105; TR. 107-118.) The ALJ found these opinions somewhat persuasive as they were consistent with the record available at the hearing. (TR. 18-19.) However, the ALJ found that Plaintiff should be limited to sedentary work, as opposed to light work found by the state agency consultants, because the state agency consultants' opinions were provided before some of Plaintiff's medical treatment occurred. (TR. 19; TR. 439; TR. 442.)

In short, the evidentiary record shows the ALJ considered all the relevant evidence, including the medical records, observations of physicians, and Plaintiff's description of his limitations, in assessing Plaintiff's RFC. The ALJ did not simply formulate an RFC without the benefit of any medical evidence. Therefore, the Court finds Plaintiff's assertion that the ALJ's RFC determination deficient without merit.

### 2. Step 3 of the Sequential Analysis/Listing 1.04A

At step three of the sequential analysis, the ALJ must determine whether a claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R Pt. 404, Subpt. P, App. 1. "If, at the third step, the claimant shows that his impairment meets or equals a presumptively disabling impairment listed in the regulations, the analysis stops and the claimant is automatically found disabled and is entitled to benefits." *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006) (citations omitted). The claimant bears the burden of proving that his impairments meet or equal a listing. *Johnson v. Barnhart,* 390 F.3d 1067, 1070 (8th Cir.2004). "Merely being diagnosed with a condition named in a listing and meeting some of the criteria will not qualify a claimant for presumptive disability under the listing." *McCoy v. Astrue,* 648 F.3d 605, 611–12 (8th Cir. 2011). "An impairment that manifests only some of the listing criteria, no matter how severely, does not qualify." *Id*. at 612 (quotation omitted). Further, "[t]here is no error when an ALJ fails to explain why an impairment does not equal one of the listed impairments as long as the overall conclusion is supported by the record." *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011).

Plaintiff argues the ALJ erred at step three of the sequential analysis by failing to properly consider whether his spinal impairment met the requirements of Listing 1.04A. This listing provides:

> *Disorders of the spine* (e.g. herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex

6

> loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R Pt. 404, Subpt. P, App. 1 § 1.04A. To satisfy this listing, "[a] claimant must show he simultaneously suffers from all four of the listed criteria of nerve root compression in the second part of the listing (neuro-anatomic distribution of pain, limitations in motion, motor loss, and positive straight leg tests)." *Crowley v. Saul*, No. No. 19-CV-0035, 2020 WL 3145693, at *4 (N.D. Iowa June 12, 2020) (quotation and citation omitted). "[I]f the criteria occur scattered over time, wax and wane, or are present on one examination but absent on another, the nerve root compression does not meet the severity level required to meet the listing." *Id*. (quotation omitted).

In her opinion, the ALJ concluded Plaintiff's impairments did not meet Listing 1.04A because there was no evidence of "nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication." (TR. 5.) Plaintiff claims that the ALJ's findings of fact and conclusions were erroneous because the record does, contrary to the ALJ's determination, contain evidence of nerve root compression. Plaintiff points to a lumbar MRI from April 16, 2020 which showed mild scoliosis; broad based disc protrusion at the L5-S1 level with severe left foraminal stenosis contacting the exiting left L5 nerve root; right posterolateral/lateral disc extrusion at the L4-L5 level contributing to moderate to severe right foraminal stenosis coming close to the exiting right L4 nerve root and descending right L5 nerve root; broad based disc protrusion at L3-4 causing moderate to severe right foraminal stenosis contacting the descending right L4 nerve root and exiting right L3 nerve root; and spondylosis and facet joint osteoarthritis with moderate left L4/5 lateral recess stenosis where the disc osteophyte complex contacted/compressed the descending left L5 nerve root. (TR. 465-66.)

As further support for his assertion that he meets the criteria of Listing 1.04A, Plaintiff points to electrodiagnostic testing results from May 14, 2020, which revealed mild to moderate left L5 lumbar radiculopathy with some ongoing denervation, likely superimposed on chronic and/or old lumbar radiculopathy in the L5 myotome. (TR. 449.) Plaintiff contends that his symptoms and medical records demonstrate the remaining requirements of Listing 1.04A because physicians documented that he experienced tenderness, limited ranges of motion, weakness, diminished sensation and reflexes, and positive straight leg raise testing. (TR. 461, 401, 421, 449, 461, 48, 395-96, and 438.)

7

There may be some evidence supporting Plaintiff's assertion that he had a compromised nerve root, substantial evidence supports the conclusion that Plaintiff did not suffer from nerve root compression and the severity of Plaintiff's symptoms did not meet Listing 1.04A's requirements. Dr. Van Den Hoven's treatment notes regarding Plaintiff's electrodiagnostic testing results from May 14, 2020 state that nerve conduction studies of Plaintiff's left lower extremity showed normal findings. (TR. 449.) Dr. Van Den Hoven's treatment notes also state that Plaintiff reported he did not have much back pain except toward the end of the day. (TR. 449.) While the record includes indications that Plaintiff experienced symptoms such as pain, some restricted ranges of motion, issues with sensation and reflexes, and positive straight leg raise testing, these symptoms were scattered over time and inconsistent throughout the record. For instance, Plaintiff had a normal straight leg raise on March 5, 2018. (TR. 401.) Also, treatment notes from March 20, 2018 and May 8, 2018 indicate Plaintiff had normal lower extremity strength bilaterally. (TR. 396; TR. 399.) Additionally, Plaintiff's claimed issues with mobility are not supported by the medical records which indicate that Plaintiff was encouraged to stop using a cane and could ride a bike without discomfort. In sum, the record supports the ALJ's conclusion that Plaintiff did not meet the criteria of Listing 1.04A.

## CONCLUSION

For the reasons stated, and after careful consideration of each argument presented in Plaintiff's brief, the Court finds that the Commissioner's decision is supported by substantial evidence on the record as a whole and is not contrary to law.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for an Order Reversing the Commissioner's Decision is denied. The Motion to Affirm Commissioner's Decision is granted. Judgment will be entered by separate document providing that the decision of the Commissioner is affirmed.

Dated this 3rd day of August, 2022.

BY THE COURT:

s/ Susan M. Bazis
United States Magistrate Judge